# UNITED STATES DISTRICT COURT
# NOTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **MORE THAN GOURMET, INC.**<br>an Ohio corporation,<br>929 Home Avenue,<br>Akron, Ohio 44310<br><br>Plaintiff,<br><br>vs.<br><br>**WILLIAM FINNEGAN**<br>113 Flycatcher Way<br>Lake Frederick, Virginia 22630<br><br>Defendant. | Case No.<br><br>Judge<br><br><br><br>***Complaint for Breach of Contract,<br>Preliminary Injunction, Permanent<br>Injunction, and Other Relief***<br><br><br><br>**JURY DEMANDED** |

Plaintiff More Than Gourmet, Inc. ("MTG") for its Complaint against Defendant William Finnegan ("Finnegan" or "Defendant") states as follows:

## THE PARTIES

1. MTG, at all times pertinent hereto, was and is a duly organized and validly existing corporation under the laws of the State of Ohio with its principal office located in Akron, Summit County, Ohio.

2. Finnegan is an individual in the State of Virginia who, upon information and belief, resides at 113 Flycatcher Way, Lake Frederick, Virginia 22630.

3. Upon information and belief, Finnegan has used MTG's confidential information in direct violation of the Nondisclosure, Nonsolicitation, Noncompetition and Inventions Assignment Agreement (the "Nondisclosure Agreement") entered into between MTG and Finnegan. A true and accurate copy of this Nondisclosure Agreement is attached as Exhibit 1.

## JURISDICTION AND VENUE

4. MTG brings this action pursuant to the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*. This Court possesses subject matter jurisdiction over MTG's trade secrets claim as it arises under the laws of the United States within the meaning of 28 U.S.C. § 1331.

5. Pursuant to 28 U.S.C. § 1367, this Court possesses supplemental jurisdiction over MTG's remaining claims.

6. MTG also brings this matter before this Court based upon diversity of citizenship, 28 U.S.C. § 1332(a), as there is an actual controversy between the parties, who are diverse of citizenship, and the amount in controversy exceeds $75,000.00.

7. This Court possesses personal jurisdiction over Finnegan as he performed services for MTG, acquired MTG's trade secrets in, and used trade secrets in this District and Division, and currently performs services and activities in this District and Division, and the claims in this action arise out of these activities.

8. Venue is proper pursuant to 28 U.S.C. § 1391(b), as Finnegan performed and presently provides services that compete with MTG in this District and Division. Upon information and belief, Finnegan is using and/or has used MTG's confidential information that Finnegan received within this District and Division.

9. Venue is further proper pursuant to 28 U.S.C. § 1391(b), as MTG and Finnegan have continuous and systematic contacts with this District and Division.

## FACTUAL ALLEGATIONS

10. MTG manufactures, distributes, and sells culinary sauces and stocks to high-end grocery stores across the United States.

11. On September 12, 2005, MTG hired Finnegan to be its Vice President and

General Manager.

12. In his capacity as MTG's Vice President and General Manager, Finnegan responsibilities included, but were not limited to, overseeing MTG's sales and marketing efforts.

13. In 2008, MTG hired Finnegan to be its President.

14. In his capacities as MTG's Vice President and General Manager and as MTG's President, Finnegan had detailed knowledge of and extensive access to MTG's highly-valuable trade secrets and confidential and proprietary information, including, but not limited to, MTG's marketing plans and strategies, pricing information, customer agreements, customer lists and information, customer preferences and relationships, vendor and supplier information and relationships, product information, research and development, profitability and profit margins, and business plans and strategies.

15. On November 29, 2012, Finnegan entered into a Nondisclosure Agreement with MTG. A true and accurate copy of this Nondisclosure Agreement is attached as Exhibit 1.

16. As set forth in the Nondisclosure Agreement, Finnegan and MTG entered into the agreement for the following reasons:

> <u>Why this Agreement is Necessary</u>. As part of [Finnegan's] job with MTG, MTG will be entrusting [him] with significant amounts of Confidential Information about MTG. For purposes of this Agreement, the phrase "*Confidential Information*" includes, but is not limited to, the following things: all non-public information about MTG's customers (including their contact information, lists of customers, customer agreements, and customer preferences and relationships), designs and design strategies, recipes, research, development, vendors, vendor relationships, suppliers, supplier relationships, pricing, profitability and profit margins, business plans and strategies, marketing plans and strategies, intellectual property, techniques for sales (marketing and otherwise), and other trade secrets. This Confidential Information is not generally known outside of MTG, and MTG goes to great lengths to protect the secrecy of its Confidential Information. Accordingly, the Confidential Information gives MTG an important advantage over its competitors.
>
> This Agreement is necessary to make sure that the Confidential Information remains secret, even after [Finnegan's] employment ends. This Agreement is also

necessary to protect MTG's goodwill with its customers, as well as the significant investment in specialized training that MTG has made with respect to [Finnegan's] employment.

*See* Exhibit 1 at ¶ 1.

17. Under the Nondisclosure Agreement, Finnegan agreed as follows:

[Finnegan's] Duties Regarding Confidential Information. I agree that **all Confidential Information is and will always remain the exclusive property of MTG**. I will never have any ownership right in any Confidential Information. I understand that MTG is giving me access to its Confidential Information solely to enable me to perform my officially assigned duties as part of my job for MTG.

**I will never, at any time, use or disclose Confidential Information except as necessary to perform my officially assigned duties as part of my job for MTG**. When my employment ends, I will return immediately to MTG all documents, computers, disks, files, emails, passwords, and other items that contain Confidential Information, and I will not keep any copies. **After my employment with MTG has ended for any reason, I will never use any Confidential Information for any purpose, and will never disclose any Confidential Information to anyone**. If any Confidential Information enters the public domain as the result of my own act or failure to act, then I must continue to keep the Confidential Information secret.

*See* Exhibit 1 at ¶ 4 (emphasis added).

18. Regarding remedies for breach under the Nondisclosure Agreement, Finnegan agreed as follows:

Remedies for Breach. I agree that if I breach any part of this Agreement, my breach, no matter how small, will be a material breach that will cause irreparable damage to MTG or its successor in interest and will entitle them to obtain, among other things, injunctive and other equitable relief, including but not limited to a temporary restraining order, a decree of specific enforcement, and/or a preliminary injunction, without being required to post a bond or other security. The fact that I may have a claim or cause of action to assert against MTG or its successor in interest, or any of their employees, whether predicated on this Agreement or otherwise, shall not be any defense to the full enforcement of this Agreement and shall not relieve me of any of my obligations in this Agreement. I agree to reimburse MTG and its successor in interest for all reasonable expenses, fees and costs incurred in connection with a proceeding to enforce this Agreement, including attorneys' fees and related costs and expenses.

*See* Exhibit 1 at ¶ 7.

19. The confidential information Finnegan received is not publicly known or readily ascertainable by others and provides MTG with a considerable advantage over its competitors.

20. MTG has engaged in reasonable efforts to preserve the secrecy of its confidential and proprietary information, including, among other actions, requiring employees and visitors to execute nondisclosure agreements, not sharing its confidential information with customers and suppliers, and otherwise restricting access to its confidential information.

21. On August 22, 2012, MTG entered into a business relationship with Christian Potier, S.A. ("Potier S.A.") to sell a co-branded line of sauces.

22. Upon information and belief, Potier S.A. is a French corporation with its principal place of business at 1189 Chemin de Beauchamp, CS20008 Montreux, F-84207 Carpentras Cedex, France.

23. As part of his responsibilities as President of MTG, Finnegan knew all aspects of the business relationship, marketing opportunities, and pricing and distribution channels relative to the working relationship between MTG and Potier S.A.

24. On or around December 12, 2012, the United States Department of Agriculture ("USDA") ordered the recall of one of the co-branded sauces and prohibited it from being sold in the United States.

25. On September 6, 2013, MTG filed a lawsuit against Potier S.A. for breach of contract, which was styled *More Than Gourmet, Inc. v. Cristian Potier, S.A.*, United States District Court for the Northern District of Ohio Case No. 5:13-cv-1966.

26. Finnegan was intimately involved in all aspects of MTG's working relationship with Potier S.A., the lawsuit against Potier S.A., and the resolution of the disputes with Potier S.A. based upon his position as MTG's President.

27. On January 27, 2015 Finnegan notified MTG that he was resigning from his employment, effective February 13, 2015. At the time, Finnegan told MTG that he was exiting the food business altogether.

28. Upon information and belief, since resigning from his employment with MTG, Finnegan has retained, used, copied, and/or disclosed MTG's confidential information without MTG's authorization.

29. Upon information and belief, since approximately January 2018, Finnegan has been acting as an employee or agent of Potier S.A. and/or Christian Potier USA Inc. ("Potier USA").

30. Upon information and belief, Potier USA is a Delaware corporation that is headquartered in Northern Virginia and is a subsidiary of or affiliated company with Potier S.A.

31. Potier S.A. and Potier USA manufacture, distribute, and sell culinary sauces and stocks and are a competitor of MTG.

32. Upon information and belief, Finnegan currently is the president of Potier USA.

33. According to Finnegan's LinkedIn webpage: "Christian Potier S.A. is a global company with its USA subsidiary headquartered in Northern Virginia. We are devoted to culinary excellence, use noble ingredients only and are always guided by our French culinary heritage. We practice a genuine entrepreneurial spirit in working closely with our B2B, Foodservice and Retail business partners. We craft impeccable sauces and marinades in small batches for Asian, French, Italian, and American cuisines."[1]

34. Since Finnegan began performing services as an employee or agent of Potier S.A. and/or Potier USA, they have had a marked increase in sales to a number of MTG's key

---

[1] See: https://www.linkedin.com/in/bill-finnegan-95992712.

customers, including, but not limited to, The Kroger Company ("Kroger"), Harris Teeter Supermarkets, Inc. ("Harris Teeter"), Roundy's Supermarkets, Inc. ("Roundy's"), The Fresh Market, Inc. ("The Fresh Market"), Whole Foods Market Inc. ("Whole Foods"), Heinen's, Inc. ("Heinen's"), Bashas' Inc. ("Bashas"), and specialty retail stores ("the Specialty Retailers"). Upon information and belief, Finnegan, on behalf of Potier S.A. and Potier USA, has used MTG's confidential information to solicit the business of these entities away from MTG and for the benefit of Potier S.A. and/or Potier USA.

35. Finnegan's actions and improper use of MTG's confidential information has resulted in the transfer of business from MTG to Potier S.A. and/or Potier USA.

36. Finnegan continues to retain and use MTG's confidential information in violation of the Nondisclosure Agreement.

37. Finnegan continues to copy, use, and/or disclose MTG's confidential information.

38. Based on Finnegan's violation of the Nondisclosure Agreement, Potier S.A. and/or Potier USA continue to retain, use, and/or disclose MTG's confidential information.

## COUNT I: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT

39. MTG incorporates herein by reference all allegations set forth in Paragraphs 1 through 38 as if fully rewritten herein.

40. The confidential and proprietary information to which Finnegan was exposed and had access, as described in this Complaint, constitute trade secrets within the meaning of 18 U.S.C. §1839(3).

41. MTG took reasonable steps to protect its confidential, proprietary, and trade secret information.

42. During his employment with MTG, Finnegan acquired MTG's trade secret

information.

43. MTG's confidential, proprietary, and trade secret information derives economic value from not being generally known or readily ascertainable.

44. Upon information and belief, after ending his relationship with MTG and continuing to the present, Finnegan, individually and on behalf of Potier S.A. and Potier USA, without justification or privilege to do so, has misappropriated MTG's trade secrets used in, or intended for use in, interstate or foreign commerce, by taking, retaining, and using MTG's confidential, proprietary, and trade secret information to further Finnegan's business interests and the interests of Potier S.A. and Potier USA.

45. Finnegan acquired and used MTG's confidential, proprietary, and trade secret information on behalf of Potier S.A. and Potier USA in their operations, pricing, solicitation of business, distribution and solicitation of customers.

46. Finnegan further acquired and misappropriated MTG's confidential, proprietary, and trade secret information by, among other actions, surreptitiously and without justification or privilege to do so, retaining, using, disclosing and copying MTG's confidential, proprietary and trade secret information to unfairly compete with MTG.

47. MTG has no adequate remedy at law to redress the aforementioned misappropriations of its trade secrets.

48. As a direct and proximate result of Finnegan's actions, MTG faces the immediate and irreparable loss of its confidential information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of its investment in time and energy in generating its confidential information. No amount of money could compensate MTG for these losses.

49. MTG is entitled to preliminary and permanent injunctive relief, enjoining and restraining Finnegan and any other person or entity acting in aid or concert, or in participation with him as follows: (a) prohibiting Finnegan from acting as an employee or agent of Potier S.A. and Potier USA and otherwise using MTG's confidential information in violation of the Nondisclosure Agreement; (b) requiring Finnegan and any other person or entity acting in aid or concert, or in participation with him, to sever or alter the relationship with any customers who were contacted, solicited, and/or obtained as a result of the contractual violations of Finnegan; (c) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of MTG's trade secret or confidential information; (d) prohibiting Finnegan from engaging in any other conduct that would otherwise violate the Nondisclosure Agreement; (e) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from interfering with MTG's business and/or employment relationships and/or contracts; and (f) requiring Finnegan to immediately return all of MTG's property and information.

50. As a direct and proximate result of Finnegan's actions, MTG also has been damaged in a monetary amount to be proven at trial.

## COUNT II: MISAPPROPRIATION AND USE OF TRADE SECRETS UNDER OHIO LAW

51. MTG incorporates herein by reference all allegations set forth in Paragraphs 1 through 50 as if fully rewritten herein.

52. The confidential and proprietary information to which Finnegan was exposed and had access, as described in this Complaint, constitutes trade secrets within the meaning of Section 1333.61(D) of the Ohio Revised Code.

53. During his employment with MTG, Finnegan acquired MTG's trade secret

information.

54. Upon information and belief, after ending his relationship with MTG and continuing to the present, Finnegan, individually and on behalf of Potier S.A. and Potier USA, without justification or privilege to do so, has misappropriated MTG's trade secrets used in, or intended for use in, interstate or foreign commerce, by taking, retaining, and using MTG's confidential, proprietary, and trade secret information to further Finnegan's business interests and the interests of Potier S.A. and Potier USA and to directly compete with MTG.

55. Finnegan acquired and used MTG's confidential, proprietary, and trade secret information on behalf of Potier S.A. and Potier USA in their operations, pricing, solicitation of business, distribution and solicitation of customers.

56. Finnegan further acquired and misappropriated MTG's confidential, proprietary, and trade secret information by, among other actions, surreptitiously and without justification or privilege to do so, retaining, using, disclosing and copying MTG's confidential, proprietary and trade secret information to unfairly compete with MTG.

57. MTG has no adequate remedy at law to redress the aforementioned misappropriations of its trade secrets.

58. As a direct and proximate result of Finnegan's actions, MTG faces the immediate and irreparable loss of its confidential information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of its investment in time and energy in generating its confidential information. No amount of money could compensate MTG for these losses.

59. MTG is entitled to preliminary and permanent injunctive relief, enjoining and restraining Finnegan and any other person or entity acting in aid or concert, or in participation

with him as follows: (a) prohibiting Finnegan from acting as an employee or agent of Potier S.A. and Potier USA and otherwise using MTG's confidential information in violation of the Nondisclosure Agreement; (b) requiring Finnegan and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of the contractual violations of Finnegan; (c) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of MTG's trade secret or confidential information; (d) prohibiting Finnegan from engaging in any other conduct that would otherwise violate the Nondisclosure Agreement; (e) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from interfering with MTG's business and/or employment relationships and/or contracts; and (f) requiring Finnegan to immediately return all of MTG's property and information.

60. As a direct and proximate result of Finnegan's actions, MTG has also been damaged in a monetary amount to be proven at trial.

## COUNT III: BREACH OF CONTRACT

61. MTG incorporates herein by reference all allegations set forth in Paragraphs 1 through 60 as if fully rewritten herein.

62. On November 29, 2012, Finnegan entered into the Nondisclosure Agreement with MTG.

63. The Nondisclosure Agreement is a valid contract between MTG and Finnegan. In presenting the Nondisclosure Agreement to Finnegan, MTG made an offer to Finnegan. As consideration for the Nondisclosure Agreement, MTG agreed to continue to employ Finnegan, which Finnegan accepted. In exchange, among other things, Finnegan agreed to keep MTG's

confidential, proprietary, and trade secret information secret and to not use the same for any purpose other than on behalf of MTG.  The parties to the Nondisclosure Agreement had contractual capacity and manifested their mutual assent to the Nondisclosure Agreement the terms of which are legal.

64. Finnegan has breached the Nondisclosure Agreement by, among other actions taking, retaining, using, and disclosing MTG's confidential, proprietary, and trade secret information and using MTG's confidential, proprietary, and trade secret information to aid Potier S.A. and Potier USA unfairly in the marketplace.

65. MTG has performed all of its obligations under the Nondisclosure Agreement and all conditions precedent to the enforcement of the Nondisclosure Agreement have been satisfied, waived, or abandoned.

66. As a direct and proximate result of Finnegan's multiple and ongoing breaches of the Nondisclosure Agreement, MTG has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information.  MTG has no adequate remedy at law for these losses as no amount of money can compensate MTG for these losses.

67. MTG is entitled to preliminary and permanent injunctive relief, enjoining and restraining Finnegan and any other person or entity acting in aid or concert, or in participation with him as follows: (a) prohibiting Finnegan from acting as an employee or agent of Potier S.A. and Potier USA and otherwise using MTG's confidential information in violation of the Nondisclosure Agreement; (b) requiring Finnegan and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were

contacted, solicited, and/or obtained as a result of the contractual violations of Finnegan; (c) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of MTG's trade secret or confidential information; (d) prohibiting Finnegan from engaging in any other conduct that would otherwise violate the Nondisclosure Agreement; (e) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from interfering with MTG's business and/or employment relationships and/or contracts; and (f) requiring Finnegan to immediately return all of MTG's property and information.

68. As a direct and proximate result of Finnegan's actions, MTG also has been damaged in a monetary amount to be proven at trial.

## COUNT IV: TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS RELATIONSHIPS

69. MTG incorporates herein by reference all allegations set forth in Paragraphs 1 through 68 as if fully rewritten herein.

70. Finnegan was aware of MTG's business relationship with Kroger, Harris Teeter, Roundy's, The Fresh Market, Whole Foods, Heinen's, Bashas', and the Specialty Retailers, certain business plans, certain customers and prospective customers, and certain vendors and prospective vendors. Without authorization to do so, Finnegan, in concert with Potier S.A. and Potier USA, contacted these MTG customers or vendors for the purpose of interfering with MTG's business relationship with these individuals.

71. Without justification or privilege, Finnegan wrongfully interfered with those contractual and business relationships by using MTG's confidential, proprietary, and trade secret information for purposes of unlawfully competing against MTG.

72. Through his actions, Finnegan, potentially in concert with others, has maliciously,

willfully, and intentionally interfered with MTG's business, customer, and contractual relationships.

73. As a direct and proximate result of Finnegan's actions, MTG has suffered and continues to suffer the immediate loss of its trade secrets and other proprietary information, the loss of its competitive position, the loss of business goodwill, the loss of sales, and the loss of investment in time and energy in generating its confidential and proprietary information. MTG has no adequate remedy at law for these losses as no amount of money can compensate MTG for these losses.

74. MTG is entitled to preliminary and permanent injunctive relief, enjoining and restraining Finnegan and any other person or entity acting in aid or concert, or in participation with him as follows: (a) prohibiting Finnegan from acting as an employee or agent of Potier S.A. and Potier USA and otherwise using MTG's confidential information in violation of the Nondisclosure Agreement; (b) requiring Finnegan and any other person or entity acting in aid or concert, or in participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of the contractual violations of Finnegan; (c) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from otherwise using or disclosing any of MTG's trade secret or confidential information; (d) prohibiting Finnegan from engaging in any other conduct that would otherwise violate the Nondisclosure Agreement; (e) prohibiting Finnegan and any other person or entity acting in aid or concert, or in participation with him from interfering with MTG's business and/or employment relationships and/or contracts; and (f) requiring Finnegan to immediately return all of MTG's property and information.

75. As a direct and proximate result of Finnegan's actions, MTG also has been

damaged in a monetary amount to be proven at trial.

## COUNT V: PUNITIVE DAMAGES

76. MTG incorporates herein by reference all allegations set forth in Paragraphs 1 through 75 as if fully rewritten herein.

77. Finnegan has acted with actual malice and committed intentional, reckless, wanton, willful, and/or gross acts that have and continue to cause injury to MTG and its property.

78. Finnegan has and continues to willfully violate the Nondisclosure Agreement.

79. Finnegan has engaged in unlawful business practices and have interfered with MTG's customers and contractual and business relationships.

80. Finnegan has acted and otherwise conducted himself as alleged herein maliciously, fraudulently, oppressively, with malice, and/or with a conscious disregard for the rights of MTG.

81. MTG is entitled to the maximum award of punitive damages permitted by law.

## REQUEST FOR PRELIMINARY INJUNCTION

82. Federal Civil Rule 65 allows this Honorable Court to issue preliminary injunctive relief under the circumstances set forth in this Complaint.

83. In this case, MTG submits the specific facts referenced in this Complaint that justify injunctive relief.

84. Finnegan's unlawful misappropriation, retention, and use of MTG's confidential, proprietary, and trade secret information extends to Potier S.A. and Potier USA, which are direct competitors of MTG.

85. Finnegan already has used MTG's protected information in direct competition

with MTG. This has included using MTG's confidential and proprietary information to compete unfairly and to contact and solicit MTG's customers and prospects. Further use of MTG's confidential, proprietary, and trade secret information will jeopardize MTG's ability to fairly compete in the marketplace and give Finnegan, Potier S.A., and Potier USA an unfair and unlawful advantage.

86. As set forth in the Nondisclosure Agreement, Finnegan agreed as follows: "I agree that if I breach any part of this Agreement, my breach, no matter how small, will be a material breach that will cause irreparable damage to MTG or its successor in interest and will entitle them to obtain, among other things, injunctive and other equitable relief, including but not limited to a temporary restraining order, a decree of specific enforcement, and/or a preliminary injunction, without being required to post a bond or other security." *See* Exhibit 1 at ¶ 7.

87. For these reasons and those more fully described in this Complaint, MTG seeks a preliminary injunction to prevent this immediate and irreparable harm.

## DAMAGES

WHEREFORE, Plaintiff MTG respectfully requests that this Court enter judgment in its favor and against Finnegan on the Complaint as follows:

1. That this Court preliminarily and permanently enjoin and restrain Finnegan and any other person or entity acting in aid, concert, or participation with him as follows:

(a) prohibiting Finnegan from acting as an employee or agent of Potier S.A. and Potier USA and otherwise violating his Nondisclosure Agreement with MTG;

(b) prohibiting Finnegan and any other person or entity acting in aid, concert, or participation with him from otherwise using or disclosing any of MTG's trade secret or confidential information;

      (c) requiring Finnegan and any other person or entity acting in aid, concert, or participation with him, to sever the relationship with any customers who were contacted, solicited, and/or obtained as a result of the contractual violations of Finnegan;

      (d) prohibiting Finnegan and any other person or entity acting in aid, concert, or participation with him from soliciting or encouraging any employee, contractor, vendor, or customer to terminate their relationship with MTG;

      (e) prohibiting Finnegan from engaging in any other conduct that would otherwise violate the Nondisclosure Agreement; and

      (f) prohibiting Finnegan and any other person or entity acting in aid, concert, or participation with him from interfering with MTG's business and/or relationships and/or contracts.

2.    That this Court require Finnegan and any other person or entity acting in aid, concert, or participation with him to immediately return all of MTG's property, keeping no copies of MTG's property;

3.    That this Court require Finnegan to provide an accounting of all profits, compensation, commission, remuneration, and other benefits that he, Potier S.A., or Potier USA has obtained through the activities described herein;

4.    That MTG be awarded compensatory and punitive damages in an amount to be proven at trial;

5.    That MTG be awarded its reasonable attorneys' fees and costs; and

6.    Such other relief in MTG's favor that the Court deems just and required under the circumstances of this case.

Respectfully submitted,

Zashin & Rich Co., L.P.A.

*s/ Stephen S. Zashin*
Stephen S. Zashin (0064557)
 ssz@zrlaw.com
David P. Frantz (0091352)
 dpf@zrlaw.com
950 Main Avenue, 4th Floor
Cleveland, OH  44113
T: (216) 696-4441
F: (216) 696-1618

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a trial by the maximum number of jurors permitted by law.

*s/ Stephen S. Zashin*
Stephen S. Zashin (0064557)

*Attorney for Plaintiff*